**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| NABOR MONTES, on behalf of himself and all similarly situated persons, ) ) ) ) *Plaintiff*, ) ) v. ) ) ) SANFORD KAHN, LLP, an Illinois Partnership; ) AMY MELAND SELLERGREN; and WHIPPLETREE ) MHC, LLC, a Delaware Limited Liability Company ) d/b/a "Whippletree Village"; ) ) ) *Defendants*. ) | No. 18-cv-08227 |

## FIRST AMENDED CLASS ACTION COMPLAINT AT LAW AND EQUITY

Plaintiff NABOR MONTES, on behalf of himself and all similarly situated persons, by and through his attorneys, the Open Communities Legal Assistance Program, hereby respectfully complains and alleges against Defendants, SANFORD KAHN, LLP., an Illinois Limited Liability Partnership; AMY MELAND SELLERGREN; and WHIPPLETREE MHC, LLC, a Delaware Limited Liability Company d/b/a "Whippletree Village" (collectively "Defendants"), as follows:

### Preliminary Statement

Sanford Kahn, LLP is a law firm and Illinois' largest eviction mill, filing thousands of eviction cases annually and dispossessing thousands of tenants from their homes. One of the tactics Sanford Kahn, LLP uses is to lie to tenants of color, particularly those who do not read English fluently, telling them that they need to sign paperwork to stay in their units or speak to the Judge. That paperwork turns out to be an Order of Possession. This conduct, repeated over and over again by Sanford Kahn, constitutes a fraud upon the Court system and a violation of Illinois and federal law. This action seeks to vindicate the rights of those dispossessed tenants.

## The Parties

1. Plaintiff NABOR MONTES ("Plaintiff" or "Nabor") is a natural person and resident of the State of Illinois.

2. At all times herein relevant, Plaintiff was and is the resident of the Mobile Home located at 267 Shay Road, Lot 267, in Wheling, Illinois (the "subject matter home").

3. At all times herein relevant, Plaintiff was and is the record owner of the subject matter home.

4. The lot where the subject matter home is located is part of a complex popularly known as "Whippletree Village" in Wheeling, Illinois.

5. At all times herein relevant, the owner and/or property manager of Whippletree Village was and is Defendant WHIPPLETREE MHC, LLC ("Whippletree").

6. At all times herein relevant, Whippletree conducted business under the name "Whippletree Village."

7. According to records maintained by the Illinois Secretary of State, "Whippletree Village" is not a registered name for any corporation or business entity authorized to conduct business in Illinois.

8. Defendant SANFORD KAHN LLP ("Sanford Kahn") is an Illinois Limited Liability Partnership.

9. At all times herein relevant, Sanford Kahn was and is a law firm.

10. At all times herein relevant, Sanford Kahn was engaged in the sole or primary business of the practice of law.

11. At all times herein relevant, Whippletree retained and/or employed Sanford Kahn to serve as its attorneys in most or all of its eviction cases.

12. Defendant AMY MELAND SELLERGREN ("Sellergren") is a natural person and resident of the State of Illinois.

13. At all times herein relevant, Defendant Sellergren was employed as a law partner by Sanford Kahn.

14. At all times herein relevant, Sellergren was and is a licensed attorney in the State of Illinois.

15. At all times herein relevant, Sellergren was and is the attorney primarily responsible for Sanford Kahn's eviction cases located at the Skokie courthouse.

16. At all times herein relevant, Sellergren was and is the attorney primarily responsible for Sanford Kahn's eviction cases located at the Rolling Meadows courthouse.

## General Allegations Common to All Counts

17. On or about August 15, 2012, Plaintiff signed a written, two-year Lease for the subject matter home and Lot 267. *See* "First Lease," a true and accurate copy of which is attached hereto as "Exhibit A."

18. On the same date, Plaintiff and Whippletree executed a separate "Option to Purchase Manufactured Home Addendum" giving Plaintiff the right to purchase the subject matter home. *See* "Addendum," attached hereto as Exhibit B.

19. Plaintiff timely exercised that option and purchased the subject matter home.

20. Every year thereafter, Plaintiff and Whippletree signed a new written Lease substantially in the form attached hereto as Exhibit C.

21. Upon purchase, Whippletree conveyed title to the subject matter home to Plaintiff.

22. On or about October 2, 2018, Whippletree filed an action for eviction against Plaintiff. *See* "Complaint and Summons," attached hereto as Exhibit D.

23. That action was styled *Whippletree Village as Agent v. Nabor Montes et al.,* No. 2018 M3 7351 (the "eviction action").

24. The Complaint in the eviction action asked for possession of "Lot 267 – Mobile Home."

25. At all times herein relevant, Plaintiff was and is the record owner of the Mobile Home.

26. As such, Defendants had only the legal right to seek possession of the Lot.

27. Defendants had no legal authority to seek possession of the Mobile Home.

28. In that Complaint, the Plaintiff was listed as "Whippletree Village, as Agent."

29. According to records maintained by the Illinois Secretary of State, "Whippletree Village" does not exist as a corporation in Illinois.

30. According to records maintained by the Illinois Secretary of State, "Whippletree Village" does not exist as a Limited Liability Company in Illinois.

31. According to records maintained by the Illinois Secretary of State, "Whippletree Village" does not exist as a Partnership in Illinois.

32. According to records maintained by the Illinois Secretary of State, "Whippletree Village" does not exist as a legal entity in Illinois.

33. As a result, under Illinois law, "Whippletree Village" was and is a fictitious party.

34. Under Illinois law as set forth in *Alton Evening Telegraph v. Doak*, 11 Ill. App. 3d 381, 382 (1973), the eviction action was a nullity.

35. Since the beginning of 2016, Sanford Kahn has filed more than fifty evictions naming "Whippletree Village, as Agent" as the sole Plaintiff. *See* "Cook County Docket," attached hereto

36. Under *Alton Evening Telegraph*, each and every one of those eviction cases was a nullity.

37. The Summons and Complaint listed October 18, 2018 as the return date in the Eviction Action.

38. On or about October 18, 2018, Plaintiff went to Court as required by the summons and Complaint.

39. Plaintiff brought with him several documents which formed the basis of his defense to the eviction action.

40. Plaintiff was met there by Defendant Sellergren.

41. Defendant Sellergren was accompanied by a member of the Whippletree staff.

42. That member of the Whippletree staff translated what Amy Sellergren said into Spanish.

43. Plaintiff is an immigrant who does not read or speak English.

44. Through the Whippletree employee as interpreter, Sellergren told Plaintiff that she worked for the Court.

45. Through the Whippletree employee as interpreter, Sellergren told Plaintiff that he would not be allowed to speak to the Judge unless he first signed a form.

46. Sellergren then handed Plaintiff a form and told him to sign it to speak to the Judge.

47. Plaintiff signed the form where Sellergren indicated on the form.

48. Plaintiff was unable to read the form because he did not read or understand English.

49. Plaintiff signed the form only because Sellergren told Plaintiff it was required before he could speak to the Judge.

50. The form Sellergren gave Plaintiff to sign was an order of possession. *See* "Order of Possession," attached hereto as Exhibit E.

51. That Order of Possession included Lot 267.

52. That Order of Possession also included the Mobile Home on Lot 267.

53. Whippletree was not entitled to possession of the Mobile Home because Plaintiff owns legal title to it.

54. Whippletree never paid any money to Plaintiff for possession of Plaintiff's mobile home.

55. After signing the form, Plaintiff sat down in the courtroom to wait to speak to the Judge.

56. When the Eviction Case was called, Plaintiff rose to speak to the Judge.

57. Sellergren then, through the Whippletree employee as interpreter, told Plaintiff that she was dismissing the case and he could sit down.

58. In reliance on what Sellergren told her, Plaintiff sat down again.

59. Sellergren then asked Judge Thomas Roti to enter what she called an Agreed Order of Possession.

60. Because Plaintiff does not speak or understand English, he was unable to understand the Court proceedings.

61. After the Order of Possession was entered, Sellergren went over to Plaintiff.

62. Sellergren, through the Whippletree employee as interpreter, told Plaintiff that the Judge said he was allowed to keep his home.

63. Plaintiff personally witnessed Sellergren and the Whippletree employee make the same statements to several other tenants in Court on October 18, 2018.

64. Those tenants also spoke little or no English.

65. Upon information and belief, Sellergren acted pursuant to Sanford Kahn's standard practices and policies.

66. Plaintiff did not discover what the Order of Possession was until he retained his present counsel.

67. After the Order of Possession was entered, Whippletree employees began blocking Plaintiff from entering his Mobile Home.

68. Those employees told Plaintiff that he was required to pay $1,400 to gain access to his Mobile Home.

69. In reliance on those statements, Plaintiff made several payments to Whippletree.

70. Those payments totaled not less than $1,000.

71. In reality, Whippletree had no intention of withdrawing the Order of Possession.

72. As a direct and proximate result of Defendants' actions, Plaintiff has suffered significant damages.

73. Those damages include, without limitation, the following:

    a. Damage to his credit from the entry of the order of possession;

    b. Loss of the right to possess his own Mobile Home;

    c. Extreme emotional distress, including depression and stomachaches;

    d. The lost monies paid to Whippletree;

    e. Other actual and other damages.

74. Plaintiff has signed a written attorney-client agreement with the Open Communities Legal Assistance Program and has expressly assigned all claims for attorney fees herein to Open Communities.

## Class Action Allegations

75. Plaintiff brings this action on behalf of himself and two classes of similarly situated persons.

76. **Class A** consists of (1) all defendants in any eviction action (2) brought in Illinois (3) by Sanford Kahn on behalf of a Landlord (4) who signed an order of possession proffered by

Sanford Kahn (5) without being told by a Sanford Kahn attorney that the document was, in fact, an Order of Possession.

77. **Class A1** consists of all members of Class A who do not speak or read English fluently.

78. **Class B** consists of (1) all defendants in any eviction action (2) brought in Illinois (3) by Whippletree as Plaintiff (4) who signed an order of possession (5) without being told by a Whippletree employee that the document was, in fact, an Order of Possession.

79. **Class B1** consists of all members of Class A who do not speak or read English fluently.

80. Upon information and belief, the membership in each class numbers in the hundreds.

81. Sanford Kahn has filed not less than one thousand five hundred evictions in the First Municipal District of Cook County alone so far in 2018.

82. Overall, Sanford Kahn files not less than five thousand evictions annually.

83. According to a random sampling of 429 eviction cases filed by Sanford Kahn in 2018, 42% of all cases filed by Sanford Kahn end in orders of possession.

84. Nearly half – 46.67% - of those orders of possession were entered against people of color (Hispanic, Asian, or African-American).

85. However, only 39% of eviction cases filed by Sanford Kahn are against people of color.

86. In other words, people of color are far more likely than Caucasians to have an order of possession entered against them by Sanford Kahn.

87. Sixteen percent (16%) of the sampled cases were against people of Hispanic descent.

88. However, eighteen percent (18%) of all orders of possession obtained by Sanford Kahn were entered against people of Hispanic descent.

89. In other words, 46% (forty-six percent) of all cases filed by Sanford Kahn against people of Hispanic descent ended in orders of possession.

90. In other words, people of Hispanic descent are more likely than Caucasians to have an order of possession entered against them by Sanford Kahn.

91. Upon information and belief, that is because Sanford Kahn presents some or most of those Orders of Possession to those defendants under false pretenses, substantially similar to the facts set forth herein.

92. The Whippletree Mobile Home Complex contains approximately four hundred thirteen (413) units.

93. Plaintiffs' counsel is experienced in class actions and will adequately represent the Plaintiffs' interests.

### COUNT I – CLASS A
### VIOLATIONS OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. 1692e
### *Against Sanford Kahn and Amy Sellergren Only*

94. Plaintiff restates and re-alleges Paragraphs 1-93 of this Class Action Complaint as if fully set forth herein.

95. The people of the United States, by and through their popularly elected Congress, enacted a statute codified at 15 U.S.C. 1692a *et seq.*, and popularly known as the Fair Debt Collection Practices Act ("FDCPA").

96. The FDCPA was in force and effective at all times herein relevant.

97. At all times herein relevant, Sanford Kahn was and is a "debt collector" as that term is defined by 15 U.S.C. 1692a(6).

98. At all times herein relevant, Amy Meland Sellergren was and is a "debt collector" as that term is defined by 15 U.S.C. 1692a(6).

99. At all times herein relevant, Whippletree was and is a "creditor" as defined by 15 U.S.C. 1692a(4).

100. At all times herein relevant, Plaintiff was and is a "consumer" as defined by 15 U.S.C. 1692a(3).

101. Pursuant to 15 U.S.C. 1692e(5), "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . The threat to take any action that cannot legally be taken or that is not intended to be taken."

102. Pursuant to 15 U.S.C. 1692e(9), "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval."

103. Pursuant to 15 U.S.C. 1692e(9), "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

104. Pursuant to 15 U.S.C. 1692e(15), "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any

debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .The false representation or implication that documents are not legal process forms or do not require action by the consumer."

105. Sanford Kahn and Sellergren violated 15 U.S.C. 1692e by one or more of the following acts or omissions:

a. Falsely stating to Plaintiff that the Order of Possession was a sign-up sheet to speak to the Judge;

b. Preventing Plaintiff from presenting his defense to the Judge;

c. Falsely stating to Plaintiff that the Order of Possession allowed him to keep his home;

d. Other unlawful acts and/or omissions as set forth herein.

106. Pursuant to 15 U.S.C. 1692k,

(a) AMOUNT OF DAMAGES Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of such failure;

(2)

(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

(B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, hereby respectfully requests this Honorable Court enter judgment in his favor and in favor of the Class and against Defendants Sanford Kahn and Sellergren, jointly and severally, in an amount to be proven at trial but not less than $500,000 or 1% of Defendants' net worth, whichever is lesser, plus costs of suit, interest on the judgment, attorney fees, and whatever additional relief this Court deems appropriate and just under the circumstances.

## COUNT II – CLASSES A AND B
## VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD
## AND DECEPTIVE BUSINESS PRACTICES ACT
### *Against All Defendants*

107. Plaintiffs restate and re-allege paragraphs 1-106 of this Class Action Complaint as if fully set forth herein.

108. The people of the State of Illinois, by and through their popularly elected legislature, enacted a statute codified at 815 ILCS 505/1 *et seq.*, and entitled the "Illinois Consumer Fraud and Deceptive Business Practices Act." ("ICFA").

109. ICFA was in force and effective at all times herein relevant.

110. Under Illinois law, tenants are consumers protected by ICFA.

111. Pursuant to ICFA,

```
(815 ILCS 505/2) (from Ch. 121 1/2, par. 262)
    Sec. 2. Unfair methods of competition and unfair or
deceptive acts or practices, including but not limited to the
use or employment of any deception fraud, false pretense, false
promise, misrepresentation or the concealment, suppression or
omission of any material fact, with intent that others rely upon
the concealment, suppression or omission of such material fact,
or the use or employment of any practice described in Section 2
of the "Uniform Deceptive Trade Practices Act", approved August
5, 1965, in the conduct of any trade or commerce are hereby
declared unlawful whether any person has in fact been misled,
deceived or damaged thereby. In construing this section
consideration shall be given to the interpretations of the
Federal Trade Commission and the federal courts relating to
Section 5 (a) of the Federal Trade Commission Act.
(Source: P.A. 78-904.)
```

112. Pursuant to ICFA, unfair as well as deceptive business practices are prohibited.

113. Defendants violated ICFA in one or more of the following ways:

    (a) Falsely telling Plaintiff that an order of possession was really a sign-up form to speak to the Judge;
    (b) Failing to tell Plaintiff he was signing an order of possession;
    (c) Falsely telling Plaintiff the order of possession allowed him to keep his home;
    (d) Failing to negotiate with Plaintiff in good faith;

(e) Demanding additional monies from Plaintiff using the Order of Possession as leverage;

(f) Other unfair and deceptive practices as set forth herein.

114.　　Defendants acted pursuant to their standard business practices.

115.　　Upon information and belief, Sellergren acts in a similar manner towards most or all tenants in eviction cases who do not speak English.

116.　　Defendant Whippletree, pursuant to its standard practice, sent an employee to act as an interpreter for Sellergren.

117.　　Pursuant to ICFA, "Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper . . . and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party."

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, hereby respectfully requests this Honorable Court enter judgment in his favor and in favor of the Class and against Defendants, jointly and severally, in an amount to be proven at trial, plus costs of suit, interest on the judgment, attorney fees, and whatever additional relief this Court deems appropriate and just under the circumstances.

## COUNT III – CLASSES A1 AND B1
## VIOLATIONS OF THE FAIR HOUSING ACT
### *Against All Defendants*

118.　　The Plaintiff restates and re-alleges paragraphs 1-117 of this Class Action Complaint as if fully set forth herein.

119.　　The people of the United States, by and through their popularly elected Congress, enacted a statute codified at 42 U.S.C. §3601 *et seq.* and known as the "Fair Housing Act." ("FHA").

120.    The FHA was in force and effective at all times herein relevant.

**121.**    At all times herein relevant, the subject matter property was a "dwelling" as that term is defined by 42 U.S.C. § 3602(b).

122.    Pursuant to §3604(a) of the FHA, it is unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin."

123.    Pursuant to §3604(b) of the FHA, it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."

124.    Plaintiff is, and identifies as, Hispanic.

125.    Plaintiff speaks only Spanish.

126.    Plaintiff reads only Spanish.

127.    Defendants lied to Plaintiff about the order of possession because they intended that Plaintiff not understand the Order of Possession on account of the language barrier created by his race and national origin.

128.    Defendants acted pursuant to their standard and ordinary policy.

129.    Defendants acted with animus towards Plaintiff on the basis of his race.

130.    Pursuant to §3613(a)(1)(A) of the FHA,

---

(a) Civil action

(1)

(A) An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice, or the breach of a conciliation agreement entered into under this subchapter, whichever occurs last, to obtain appropriate relief with respect to such discriminatory housing practice or breach.

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, hereby respectfully requests this Honorable Court enter judgment in his favor and in favor of the Class and against Defendants, jointly and severally, in an amount to be proven at trial, plus costs of suit, interest on the judgment, attorney fees, and whatever additional relief this Court deems appropriate and just under the circumstances.

## INDIVIDUAL CAUSE OF ACTION
## VIOLATIONS OF THE
## ILLINOIS MOBILE HOME LANDLORD AND TENANT RIGHTS ACT
### *Against Whippletree*

131. Plaintiffs restate and re-allege paragraphs 1-130 of this Class Action Complaint as if fully set forth herein.

132. The people of the State of Illinois, by and through their popularly elected legislature, enacted a statute codified at 765 ILCS 745/1, *et seq.*, and known as the Illinois Mobile Home Landlord and Tenant Rights Act ("IMHLTA").

133. The IMHLTA was in force and effective at all times herein relevant.

134. Pursuant to 765 ILCS 745/24 of the IMHLTA,

```
(765 ILCS 745/20) (from Ch. 80, par. 220)
    Sec. 20. Gifts, Donations, Bonus, Gratuity, Etc. (a) Any
park owner who, directly or indirectly, receives, collects or
accepts from any person any donation, gratuity, bonus or gift,
in addition to lawful charges, upon the representation that
compliance with the request or demand will facilitate,
influence or procure an advantage in entering into an
agreement, either oral or written, for the lease or rental of
real property, or contract of sale of a mobile home, or any
park owner or his representative, who refuses to enter into
such lease or contract of sale unless he receives, directly or
indirectly, a donation, gratuity, bonus or gift, or any park
owner or his representative who directly or indirectly aids,
abets, requests or authorizes any other person to violate any
provision of this Section, commits a violation of this Act.
    (b) Any person who pays such donation, gratuity, bonus or
gift may recover twice its value, together with costs of the
action, against any such person in violation of this Section.
(Source: P.A. 81-637.)


    (765 ILCS 745/20.5)
    Sec. 20.5. Publication of false or misleading information;
remedies. Any person who pays anything of value toward the
```

```
purchase of a mobile home or placement of a mobile home in a
mobile home park located in this State in reasonable reliance
upon any material statement or information that is false or
misleading and published by or under authority from the park
owner or developer in advertising and promotional materials,
including, but not limited to, a prospectus, the items
required as exhibits to a prospectus, brochures, and newspaper
advertising, shall have a cause of action to rescind the
contract or collect damages from the developer, park owner, or
mobile home dealer for her or his loss
(Source: P.A. 93-1043, eff. 6-1-05.)
```

135.	By demanding money from Plaintiff as a condition of granting him access to the subject matter home, Whippletree violated the IMHLTA.

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, hereby respectfully requests this Honorable Court enter judgment in his favor and against Defendant Whippletree, jointly and severally, in an amount to be proven at trial, plus costs of suit, interest on the judgment, attorney fees, and whatever additional relief this Court deems appropriate and just under the circumstances.

**ALL CLASS CAUSES OF ACTION ARE HERE REPLEA DED AS INDIVIDUAL CAUSES OF ACTION IN THE ALTERNATIVE**

>	Respectfully Submitted,
>	NABOR MONTES, on behalf of themselves and all others similarly situated,
>
>	/s/	Sheryl Melanie Ring
>	By their counsel,
>	Sheryl Ring, Esq.

Sheryl Ring, Esq. #6311043
Open Communities Legal Assistance Program/#62447
990 Grove Street, Suite 500
Evanston, Illinois 60201
(847) 501-5760
sheryl@open-communities.org

First Amended Complaint at Law and Equity *Montes v. Sanford Kahn, et al.*

## NOTICE OF ATTORNEY LIEN

    PLEASE TAKE NOTICE that Plaintiff has retained the Open Communities Legal Assistance Program as his representation in this matter, together with all claims brought or which may be brought related to the facts set forth herein. YOU ARE HEREBY NOTIFIED that Plaintiff has, by written contract, conveyed and assigned all claims for and rights of attorney fees due in any settlement or adjudication of this action to Open Communities, regardless of whether those fees accrue by suit, settlement, or otherwise.

                                                      /s/    Sheryl Melanie Ring
                                                      By their counsel,
                                                      Sheryl Ring, Esq.