IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NABOR MONTES, individually and on behalf of all similarly situated persons, | ) ) ) | |
| *Plaintiff*, | ) ) | |
| v. | ) ) | No. 2018 CV 8227 |
| SANFORD KAHN, LLP, *et al*., | ) ) ) | |
| *Defendants*. | ) | |

**PLAINTIFF'S OPPOSITION TO**
**DEFENDANT SANFORD KAHN LLP'S MOTION TO DISMISS**

Plaintiff Nabor Montes ("Plaintiff"), by and through his attorneys, the Open Communities

Legal Assistance Program, hereby respectfully responds in opposition to the Motion to Dismiss

filed by Defendant Sanford Kahn, LLP ("Sanford Kahn"), as follows:

**I.    DEFENDANT'S MOTION SHOULD BE DENIED BECAUSE IT CONTRADICTS THE WELL-PLEADED FACTS IN THE COMPLAINT AND IMPROPERLY RAISES CONTESTED EXTRINSIC MATTERS**

It's well established that this Court is required, on a motion to dismiss, to presume all facts

in the Complaint are true.

> In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. We are thus obliged in reviewing a dismissal of a complaint to take the facts alleged as true, but further we must also accept the reasonable inferences from these facts as true as well.

*Illinois Migrant Council v. Campbell Soup Co.*, 519 F.2d 391, 394 (7th Cir. 1975) (internal

quotation marks and citations omitted). Further, the Court isn't permitted to consider extrinsic

evidence either.

> It is elementary that the district judge, in considering the motions to dismiss the amended complaint, had no right to consider any facts except those well-pleaded in the amended complaint. He had no right to hear evidence. He had no right to take judicial notice of anything, with the possible exception of facts of common knowledge which controvert averments set up in the amended complaint. Judicial notice is merely a substitute for the conventional method of taking evidence to establish facts. Subject to that possible exception, he was required to apply the existing law to the facts well-pleaded in the amended complaint. In determining whether plaintiff were entitled to relief on those facts he was not permitted to resort to the dictates of his own reason, to the exclusion of controlling principles of law embodying the distilled reason of the ages. In deviating from this rule he erred.

*Grand Opera Co. v. Twentieth Century-Fox Film Corp.*, 235 F.2d 303, 307 (7th Cir. 1956). *See also Star-Kist Foods, Inc. v. Chicago, Rock Island & Pac. R. Co.*, 586 F. Supp. 252, 254 (N.D. Ill. 1984) ("Under Fed.R.Civ.P. 12(b)(6), however, the Court may not consider extrinsic evidence in determining motions to dismiss.")

Here, Sanford Kahn repeatedly violates these rules, disputing the well-pleaded facts of the Complaint by invoking an unrelated 2017 eviction case, arguing that Plaintiff hasn't yet sought to vacate the 2018 eviction order, and contesting whether or not Plaintiff speaks or reads English (he doesn't). Plaintiff is telling the truth, of course, Sanford Kahn's oblique histrionics notwithstanding. But it's worth noting that Sanford Kahn has done this before.

> At the outset of their conversation, Eileen Kahn allegedly acknowledged the inaccuracy of the complaint lodged against Long. Kahn informed Long that Shorebank would allow her two weeks to resolve the dispute by working directly with Shorebank before it pursued any adverse action against her. To obtain the two-week period, Kahn explained to Long that she needed to sign a document prepared by Kahn that would postpone the case from proceeding in Circuit Court and would preclude Shorebank from taking any action to obtain a judgment. However, quite the opposite from Kahn's representations, the document she induced Long to sign was in fact a consent to the entry of final judgment on that day, vesting unconditional possession of Long's apartment in Shorebank. The judgment also unconditionally awarded Shorebank damages in the amount of $54.61.

*Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 552 (7th Cir. 1999). So if previous events matter,

*Long* is quite persuasive.

In any event, the Seventh Circuit frowns on the use of judicial notice in determining Rule

12(b)(6) motions, including judicial notice of previous judicial proceedings, where such notice is

proper only where the *finding* from that prior proceeding "is not subject to reasonable dispute."

> The application of a previous finding to a latter proceeding must be
> beyond reasonable dispute before a court may take judicial notice
> because the effect of taking judicial notice under Rule 201 is to
> preclude a party from introducing contrary evidence and, in effect,
> directing a verdict against him as to the fact noticed. . . . If a court
> takes judicial notice of a fact whose application is in dispute, the
> court removes these weapons from the parties and raises doubt as to
> whether the parties received a fair hearing. Moreover, if a court
> could take judicial notice of a fact simply because it was found to be
> true in a previous action, the doctrine of collateral estoppel would
> be superfluous. For situations like the one at issue, we cannot allow
> a court to achieve through judicial notice what it cannot achieve
> through collateral estoppel. A district court may not take judicial
> notice of fact where its application may be reasonably disputed
> because use of this evidentiary device in this manner would abrogate
> the fundamental requirement of due process.

*Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1083 (7th Cir. 1997) (internal

quotation marks and citations omitted). This case is about whether or not the 2018 eviction order

was fraudulently and unlawfully obtained; taking judicial notice of the proceedings, when what

happened during those proceedings is so plainly in dispute (particularly given no court reporter

was present) would be a clear violation of Seventh Circuit precedent as shown in *Gen. Elec.*

*Capital Corp.* And the 2017 eviction proceedings are irrelevant: they have nothing whatsoever to

do with the issues present here.

The only question to be answered is whether Plaintiff can prove *any* set of facts entitling

him to relief. "Dismissal for failure to state a claim is proper only if the plaintiff can prove no set

of facts in support of his claims which would entitle him to relief. If it is possible to hypothesize a

set of facts, consistent with the complaint, that would entitle the plaintiff to relief, dismissal under Rule 12(b)(6) is inappropriate." *Lively v. Dynegy, Inc.*, 420 F. Supp. 2d 949, 952 (S.D. Ill. 2006). As will be shown, Plaintiff has plainly met that standard.

## I. PLAINTIFF HAS STATED A VALID CAUSE OF ACTION UNDER THE FAIR HOUSING ACT

Sanford Kahn argues that because it acted solely as an agent of Whippletree, it isn't liable under the Fair Housing Act. Saieth Sanford Kahn: "Because there are no facts even suggesting that Sanford Kahn refused to sell or rent the subject Premises to Plaintiff or was otherwise involved in the sale or rental of the Premises, Plaintiff failed to state a claim under the Fair Housing Act against Sanford Kahn." The problem is that this argument is virtually identical to that raised by insurance companies decades ago when they argued the Fair Housing Act didn't apply to *them* – and i8t has since been roundly rejected.

Beginning with the landmark case of *Laufman v. Oakley Bldg. & Loan Co.*, 408 F. Supp. 489, 493 (S.D. Ohio 1976), courts have held that the relevant inquiry in determining the applicability of the Fair Housing Act is whether the party being sued has rendered a dwelling "unavailable." In *Laufman*, the question was whether a financial institution could be sued under the FHA. The *Laufman* court answered that "a denial of financing assistance in connection with a sale of a home would effectively "make unavailable or deny" a "dwelling." When such denial occurs as a result of racial considerations, s 3604 is transgressed." Notably, the bank made the same argument that Sanford Kahn makes here: that it couldn't see or rent the unit in question.

A few years later, in *Dunn v. Midwestern Indem., Mid-Am. Fire & Cas. Co.*, 472 F. Supp. 1106, 1109 (S.D. Ohio 1979), the *Laufman* holding was expanded to apply to insurance companies. "Since insurance is a precondition to adequate housing, a discriminatory denial of insurance would

prevent a person economically able to do so from buying a house. Consequently, although insurance redlining is not expressly proscribed by the Act, it is encompassed by both the broad language of s 3604(a) and the legislative design of the Act which seeks to eliminate discrimination within the housing field." *Dunn v. Midwestern Indem., Mid-Am. Fire & Cas. Co.*, 472 F. Supp. 1106, 1109 (S.D. Ohio 1979). *Dunn* and *Laufman* were expressly adopted by the Seventh Circuit in *N.A.A.C.P. v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 299 (7th Cir. 1992):

> Silence in the legislative history could imply that Members of Congress did not anticipate that the law would apply to insurers. Silence equally could imply that the debate was about the principle of non-discrimination, leaving details to the future. **The backward phraseology of § 3604 suggests the latter possibility**.

*Id.* at 299 (emphasis supplied). And in *Nationwide Mut. Ins. Co. v. Cisneros*, 52 F.3d 1351, 1357 (6th Cir. 1995), the Sixth Circuit Court of Appeals rejected the argument that a defendant needed to be able to sell or rent a unit to be covered by the FHA.

> [P]laintiffs argue that in § 3604(a), because the general phrase "otherwise make unavailable or deny" follows the specific examples of failure "to sell or rent" or refusal "to negotiate for the sale or rental" of a dwelling, the phrase "otherwise make unavailable or deny" does not include any activities that do not directly affect the availability of a dwelling. We disagree.

Against this backdrop, let's look at the instant case. Plaintiff alleges that Amy Sellergren, an attorney and partner at Sanford Kahn, told him that he needed to sign a form in order to speak to a judge. Plaintiff alleges that Sellergren didn't identify herself, and that an employee of Whippletree, Sellergren's client, was present and translated Sellergren's words into Spanish. What does that mean? It means that *in the presence of the landlord*, Sellergren lied to Plaintiff for the sole purpose of obtaining an order of possession, thereby rendering Plaintiff's unit unavailable to him.

It's for this reason that Sanford Kahn's argument fails. Surely Sanford Kahn would agree that had Whippletree's agent made those false statements herself, Whippletree would have been liable for a violation of Section 3604 on that basis. But Sanford Kahn argues that even when it makes those statements on Whippletree's behalf, with Whippletree's agent there and serving as translator, it's still exempt from liability simply because it's a law firm. That makes no logical sense, and creates the rather perverse incentive that a landlord and its attorney can insulate each other from FHA liability simply by having the lawyer do the talking in the landlord's presence.

Where Sanford Kahn goes wrong is in its assumption that only parties capable of signing a lease or selling a house are covered under the FHA. But that's just not what courts have said that the statute means. Instead, a variety of "discriminatory business practices" are proscribed by the statute; "[t]he language of the Act is broad and inclusive. Congress intended § 3604 to reach a broad range of activities that have the effect of denying housing opportunities to a member of a protected class." *Id.* (internal quotation marks and citations omitted). Here, Sanford Kahn was acting as an agent for Whippletree, and made false statements for the sole purpose of rendering Plaintiff's dwelling unavailable. To do so, they used his inability to speak English, thereby discriminating against him on the basis of his national origin. Again: Sanford Kahn's argument is that an attorney is not liable for discriminatory actions she takes towards a tenant *in the presence of the landlord*, on the landlord's behalf, *not* in court, and for the purpose of achieving the landlord's aim of making the tenant's unit unavailable. That's not the law.

Sanford Kahn is notably unable to come up with a single reported decision which holds, as they argue, that attorneys representing landlords are exempted from Fair Housing Act liability as a matter of law. *DeSouza v. Taiman*, No. 3:16-CV-00490, 2017 WL 3444672, at *1 (D. Conn. Aug. 10, 2017), is an unreported slip opinion where a tenant sued her own former attorney, and is

utterly inapposite here. In *Givens v. Wenker*, No. 1:10-CV-382, 2012 WL 1680099, at \*7 (S.D. Ohio May 14, 2012), another unreported decision, the court granted *summary judgment* (not a 12(b)(6) dismissal) to the attorney after discovery showed that the attorney hadn't evicted the plaintiff for a discriminatory purpose. Notably, the *Givens* court concluded that the plaintiff "has asserted no legal theory by which an attorney representing a client in an eviction proceeding can be subjected to civil liability for discrimination under the FHA." The court in *Givens* did *not* say that no such theory existed. And in *Sabal Palm Condominiums of Pine Island Ridge Ass'n, Inc. v. Fischer*, 6 F. Supp. 3d 1272, 1294 (S.D. Fla. 2014), the District Court concluded that the attorney for the condominium association wasn't liable because he "has no authority to vote—and did not in fact vote—on *Sabal Palm's* decision to sue Deborah instead of simply granting her requested accommodation."

But most importantly, this case is very different than any of the three cited by Sanford Kahn. This case isn't like *Sabal Palm*, because this isn't about advice that Sanford Kahn gave to Whippletree. After all, anything that Sellergren said to Plaintiff, or to Whippletree in Plaintiff's presence, wouldn't be privileged anyway, and certainly wouldn't be legal advice. This case isn't like *DeSouza*, where a tenant sued her own attorney. And this case certainly isn't like *Givens*, which turned on this line from Comment c of the Restatement (Third) of the Law Governing Lawyers § 56 (2000) (emphasis supplied): "A lawyer, like other agents, is not as such liable for ***acts of a client*** that make the client liable." Here, it was Sellergren, not Whippletree, who made the false statements to Plaintiff, so by *Sabal Palm*'s reasoning, Sanford Kahn's motion should be denied. And the Restatement (Third) of the Law Governing Lawyers § 56 (2000) is clear that "a lawyer is subject to liability to a client or nonclient when a nonlawyer would be in similar circumstances."

In fact, the Restatement (Third) *does* recognize liability for attorneys in cases like this one. The United States Supreme Court has explained that "an action brought for compensation by a victim of housing discrimination is, in effect, a tort action. And the Court has assumed that, when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." *Meyer v. Holley*, 537 U.S. 280, 285, 123 S. Ct. 824, 828, 154 L. Ed. 2d 753 (2003). In that same vein, Comment c to section 56 of the Restatement (Third) says this:

> In general, a lawyer is not liable for a client's tort **unless the lawyer assisted the client through conduct itself tortious** or gave substantial assistance to the client knowing the client's conduct to be tortious.

Restatement (Third) of the Law Governing Lawyers § 56 (2000) (emphasis supplied). Certainly, Plaintiff has alleged assistance by Sanford Kahn in the tortious conduct. The Restatement contains no carve-out for federal legislation; in fact, Comment *i* states that "Federal legislation applies to lawyers and law firms in accordance with its jurisdictional and substantive terms." And the comments also state plainly that "[m]isrepresentation is not part of proper legal assistance . . . Thus, lawyers are civilly liable to clients and nonclients for fraudulent misrepresentation. . . ." Restatement (Third) of the Law Governing Lawyers § 56 (2000).

Instructive here is *Auriemma v. Montgomery*, 860 F.2d 273, 278 (7th Cir. 1988), where the Seventh Circuit Court of Appeals rejected the argument that attorneys were exempt from coverage under the Fair Credit Reporting Act. In finding that even government attorneys were liable under federal consumer protection law, the Court concluded that "[t]he costs of leaving unlawful conduct unremedied under the circumstances of this case outweigh any potential benefits to be gained by the judicial process by granting such immunity." 860 F.2d at 280. Immunity was proper, held the

Court, only where the actions in question were "intimately associated with the court-related duties [of the attorneys]." *Id*.

Similarly, courts have held that attorneys are subject to liability because their status is such that the public will reasonably rely on their representations being true. As the Third District Court of Appeals explained, "such liability is proper because of the greater information possessed by professionals who express opinions upon which third parties would rely." *Kline v. First W. Gov't Sec., Inc.*, 24 F.3d 480, 486 (3d Cir. 1994). An unsophisticated person appearing in court would reasonably rely on a professional making a representation regarding court process – after all, he wouldn't know any better. As such, an actual attempt to deceive that person should be actionable.

State law has reached similar conclusions. In *Newburger, Loeb & Co. v. Gross*, 563 F.2d 1057, 1080 (2d Cir. 1977), the Court held that attorneys are liable to third parties for unlawful actions.

> Under New York law an attorney generally cannot be held liable to third parties for actions taken in furtherance of his role as counsel unless it is shown that he "did something either tortious in character or beyond the scope of his honorable employment." Thus, while an attorney is privileged to give honest advice, even if erroneous, and generally is not responsible for the motives of his clients, admission to the bar does not create a license to act maliciously, fraudulently, or knowingly to tread upon the legal rights of others. . . .We find that the record supports the conclusion that [the attorney] went "beyond the scope of his honorable employment" and the district court's finding of liability.

Nor are attorneys exempt from liability under the Civil Rights Act (*See, e.g., Wyatt v. Cole*, 504 U.S. 158, 112 S. Ct. 1827, 118 L. Ed. 2d 504 (1992)).

Similarly, Sanford Kahn's argument that it is protected by the Illinois absolute litigation privilege fails under well-established Seventh Circuit precedent. "A state absolute litigation

privilege purporting to confer immunity from suit cannot defeat a federal cause of action." *Steffes v. Stepan Co.*, 144 F.3d 1070, 1074 (7th Cir. 1998). *See also Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 851 (9th Cir. 2004) (same); *Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704 (N.D. Ill. 2006); *Gray-Mapp v. Sherman*, 100 F. Supp. 2d 810, 812 (N.D. Ill. 1999) ("[t]he litigation privilege, a creation of Illinois state law, cannot bar Gray–Mapp's claim under the FDCPA."). In *Steffes* and *Pardi*, the Seventh Circuit explicitly held that the Illinois and California litigation privileges did not apply to bar claims brought under the Americans with Disabilities Act.

Further, Illinois state courts have restricted the litigation privilege to *common law* causes of action, because holding otherwise would hold that the "privilege can thwart a legislative enactment. Indeed, the chief flaw with the trial court's analogy is that invasion of privacy is a common-law theory whereas an action based on the Act is statutory." *Doe v. Williams McCarthy, LLP*, 2017 IL App (2d) 160860, ¶¶ 24-25, 92 N.E.3d 607, 614. Noting that "the absolute-litigation privilege applies to a narrow class of cases," the *Doe* court concluded that "allowing the privilege to defeat such [statutory causes of] action would make such language [creating those causes of action] a nullity." *Id*. As such, because the Fair Housing Act is a statutory right of action, not a common law claim, Sanford Kahn's motion should be denied.

## II.     PLAINTIFF STATES A VALID CAUSE OF ACTION UNDER THE ILLINOIS CONSUMER FRAUD ACT

Sanford Kahn cites to *Cripe v. Leiter*, 184 Ill. 2d 185, 703 N.E.2d 100 (1998), for the proposition that attorneys are immune from suit under the Illinois Consumer Fraud and Deceptive Business Practices Act. But *Cripe* applied to a client suing her *own* attorney for purportedly improper billing, and the holding of *Cripe* applies to situations where a fiduciary relationship exists

between the plaintiff and defendant. *Hill v. Sisters of St. Francis Health Servs., Inc.*, No. 06 C 1488, 2006 WL

3783415, at \*1 (N.D. Ill. Dec. 20, 2006).

But *Cripe* doesn't apply here for another reason. Sanford Kahn is essentially arguing that it cannot be held liable for its conduct as an attorney representing a client. That's what *Cripe* says, at least insofar as a fiduciary relationship is concerned. But this situation is different because here, Sellergren didn't identify herself to Plaintiff as an attorney. Instead, as alleged in the complaint, she effectively impersonated a member of the court staff. *Cripe*, by its terms, holds that "the legislature did not intend the Consumer Fraud Act to apply to regulate the conduct of attorneys in representing clients." 184 Ill. 2d at 199. But it would be quite bizarre to hold that an attorney failing to identify herself and impersonating a member of the court staff is somehow in the ordinary course of her own representation.

Sanford Kahn also argues that Plaintiff failed to plead that he suffered actual damages. However, Defendant's argument that Plaintiff paid monies to Whippletree proves too much – as Sanford Kahn concedes, Plaintiff paid those monies in order to satisfy that fraudulently obtained judgment, thus showing that he suffered actual damages. As Plaintiff alleges in paragraphs 69 through 73, Defendants literally blocked Plaintiff from entering his mobile home so as to coerce him into making payments – hardly the evidence of a voluntary agreement Sanford Kahn is wishcasting! Further, Plaintiff alleges in paragraph 73 of his Complaint that he suffered damage to his credit as a result of the eviction judgment.

For these reasons, Defendant's motion should be denied.

Respectfully Submitted,
NABOR MONTES, on behalf of
themselves and all others similarly
situated,


/s/    Sheryl Melanie Ring
By their counsel,
Sheryl Ring, Esq.

Sheryl Ring, Esq. #6311043
Open Communities Legal Assistance Program/#62447
990 Grove Street, Suite 500
Evanston, Illinois 60201
(847) 501-5760
sheryl@open-communities.org